# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# WEST PALM BEACH DIVISION

Case No. 9:20-cv-80897-WPD

MARCIA SORIN, Individually and on Behalf
of All Others Similarly Situated,

                 Plaintiff,

    v.

THE FOLGER COFFEE COMPANY,
A Subsidiary of THE J. M. SMUCKER COMPANY,

                 Defendant.

_____/

Case No. 9:20-cv-80897-WPD
Judge William P. Dimitrouleas

## THE FOLGER COFFEE COMPANY'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT AND MEMORANDUM IN SUPPORT WITH REQUEST FOR TELEPHONIC HEARING

Ronald Y. Rothstein (*pro hac vice*)
Sean H. Suber (*pro hac vice*)
**WINSTON & STRAWN LLP**
35 W. Wacker Drive
Chicago, IL 60601
Telephone: (312) 558-5600
Facsimile: (312) 558-5700
rrothste@winston.com
ssuber@winston.com

Cristina Calvar (Florida Bar No. 114201)
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, NY 10166-4193
Telephone: (212) 294-5331
Facsimile: (212) 294-4700
ccalvar@winston.com

Megan L. Whipp (*pro hac vice*)
**WINSTON & STRAWN LLP**
333 S. Grand Avenue
Los Angeles, CA 90071-1543
Telephone: (213) 615-1700
Facsimile: (213) 615-1750
mwhipp@winston.com

*Counsel for Defendant The Folger Coffee Company*

November 6, 2020

## <u>TABLE OF CONTENTS</u>

**Page(s)**

I.    INTRODUCTION AND BACKGROUND ....................................................... 1

II.    LEGAL STANDARDS ................................................................................... 6

III.    ARGUMENT ................................................................................................. 7

    A.    Plaintiff Lacks Article III Standing.................................................... 7

        1.    Plaintiff cannot rely on purported "expert" testing or consumer complaints to allege a particularized injury for herself .............................. 8

        2.    Plaintiff cannot pursue claims for which she has not alleged a cognizable injury—her disappointment and made-up price premium are not enough........................................................................ 9

        3.    Plaintiff cannot pursue injunctive relief on behalf of herself or the putative class because she fails to allege a likelihood of future injury..... 10

    B.    The FAC Fails on the Merits Because Plaintiff's Theory Is Implausible............. 11

        1.    The FAC is implausible because it is based on a false premise and asks the Court to engage in speculation and ignore obvious alternative explanations ........................................................................ 11

        2.    Plaintiff's alleged "expert" findings do not remedy the fatal flaw in her theory ................................................................................ 15

        3.    Based on the FAC's flaws, Plaintiff's FDUTPA claim fails on its face... 16

    C.    Dismissal Should Be with Prejudice.................................................... 19

IV.    CONCLUSION............................................................................................. 20

V.    REQUEST FOR TELEPHONIC HEARING ................................................ 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................................7, 15

*Auto. Alignment & Body Serv., Inc. v. State Farm Mut. Auto. Ins. Co.*,
   953 F.3d 707 (11th Cir. 2020) .........................................................................................5, 15

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ....................................................................................................5, 7, 15

*Carruth v. Bentley*,
   942 F.3d 1047 (11th Cir. 2019) ...........................................................................................15

*Casey v. Fla. Coastal Sch. of Law, Inc.*,
   2015 WL 10096084 (M.D. Fla. Aug. 11, 2015) ...................................................................17

*City First Mortg. Corp. v. Barton*,
   988 So. 2d 82 (Fla. Dist. Ct. App. 2008) .............................................................................19

*Colston v. Schiller*,
   2020 WL 687599 (N.D. Fla. Jan. 8, 2020) ..........................................................................19

*Cordes v. Boulder Brands USA, Inc.*,
   2018 WL 6714323 (C.D. Cal. Oct. 17, 2018) ......................................................................11

*Dapeer v. Neutrogena Corp.*,
   95 F. Supp. 3d 1366 (S.D. Fla. 2015) ...............................................................................6, 11

*Davis v. Powertel, Inc.*,
   776 So. 2d 971 (Fla. Dist. Ct. App. 2000) ...........................................................................17

*Day v. Taylor*,
   400 F.3d 1272 (11th Cir. 2005) .............................................................................................3

*Degirmenci v. Sapphire-Fort Lauderdale, LLLP*,
   693 F. Supp. 2d 1325 (S.D. Fla. 2010) .................................................................................7

*Eike v. Allergan, Inc.*,
   850 F.3d 315 (7th Cir. 2017) .................................................................................................9

*Finkelman v. NFL*,
   810 F.3d 187 (3d Cir. 2016)...................................................................................................9

*Gaminde v. Lang Pharma Nutrition, Inc.*,
   2019 WL 1338724 (N.D.N.Y. Mar. 25, 2019) ......................................................................9

*Goldin v. Boce Grp., L.C.*,
   773 F. Supp. 2d 1376 (S.D. Fla. 2011) ................................................................6

*Green v. CLP Corp.*,
   2006 WL 8436822 (N.D. Ala. Mar. 28, 2006) ......................................................9

*Griffin Indus., Inc. v. Irvin*,
   496 F.3d 1189 (11th Cir. 2007) .........................................................................14

*Hillen v. Blistex, Inc.*,
   2017 WL 2868997 (N.D. Ill. July 5, 2017).............................................................9

*Infinity Global, LLC v. Resort at Singer Island, Inc.*,
   2008 WL 1711535 (S.D. Fla. Apr. 10, 2008) .......................................................19

*Irizarry v. Orlando Utils. Comm'n*,
   393 F. Supp. 3d 1110 (M.D. Fla. 2019)................................................................7

*Koronthaly v. L'Oreal USA, Inc.*,
   374 F. App'x 257 (3d Cir. 2010) ......................................................................5, 9

*Kuenzig v. Kraft Foods, Inc.*,
   2011 WL 4031141 (M.D. Fla. Sept. 12, 2011).....................................3, 4, 14, 17

*Lewis v. Governor of Alabama*,
   944 F.3d 1287 (11th Cir. 2019) ..........................................................................7

*Marjam Supply Co. of Fla., LLC v. Pliteq, Inc.*,
   2018 WL 4932871 (S.D. Fla. Apr. 23, 2018) .......................................................11

*Marketran, LLC v. Brooklyn Water Enters., Inc.*,
   2017 WL 1292983 (S.D. Fla. Jan. 31, 2017) ...........................................5, 10, 19

*Marty v. Anheuser-Busch Cos., LLC*,
   43 F. Supp. 3d 1333 (S.D. Fla. 2014) .................................................................11

*Merrill Lynch Bus. Fin. Servs., Inc. v. Performance Mach. Sys. U.S.A., Inc.*,
   2005 WL 975773 (S.D. Fla. 2005) ......................................................................18

*Meyer v. Colavita USA Inc.*,
   2011 WL 13216980 (S.D. Fla. Sept. 13, 2011) .........................................5, 8, 10

*In re Monat Hair Care Prods. Mktg., Sales Practices, & Prods. Liab. Litig.*,
   2019 WL 5423457 (S.D. Fla. Oct. 23, 2019)........................................................10

*In re Motions to Certify Classes Against Court Reporting Firms for Charges*
    *Relating to Word Indices*,
    715 F. Supp. 2d 1265 (S.D. Fla. 2010), *aff'd*, 2011 WL 3822001 (11th Cir.
    Aug. 31, 2011) ........................................................................................................16

*Parks v. Ainsworth Pet Nutrition, LLC*,
    377 F. Supp. 3d 241 (S.D.N.Y. 2019)....................................................................11

*PNR, Inc. v. Beacon Prop. Mgmt., Inc.*,
    842 So. 2d 773 (Fla. 2003)......................................................................................17

*QSGI, Inc. v. IBM Glob. Fin.*,
    2012 WL 1150402 (S.D. Fla. Mar. 14, 2012)....................................................6, 19

*Reilly v. Chipotle Mexican Grill, Inc.*,
    711 F. App'x 525 (11th Cir. 2017) ........................................................................10

*Remedios* v. *Nat'l Fire & Marine Ins. Co.*,
    2019 WL 7956170 (S.D. Fla. Aug. 29, 2019)..........................................................6

*Rodriguez v. Recovery Performance & Marine, LLC*,
    38 So. 3d 178 (Fla. Dist. Ct. App. 2010) ...............................................................19

*Savalli v. Gerber Prods. Co.*,
    2016 WL 5390223 (S.D. Fla. Sept. 20, 2016) ...................................................4, 17

*Smith v. 2001 S. Dixie Highway, Inc.*,
    872 So. 2d 992 (Fla. Dist. Ct. App. 2004) .............................................................19

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016)..........................................................................................8, 9

*Stalley ex rel. U.S.* v. *Orlando Reg7 Healthcare Sys., Inc.*,
    524 F.3d 1229 (11th Cir. 2008) ................................................................................6

*World Fuel Servs., Inc.* v. *Thrifty Propane, Inc.*,
    2016 WL 11547771 (S.D. Fla. July 15, 2016).......................................................16

*Zlotnick v. Premier Sales Grp., Inc.*,
    480 F.3d 1281 (11th Cir. 2007) ..............................................................................17

**Statutes**

Fla. Stat. § 501.201 *et seq.* ............................................................................... *passim*

Fla. Stat. § 501.211 .....................................................................................................19

**Other Authorities**

Fed. R. Civ. P. 8 ................................................................................................................5

Fed. R. Civ. P. 9(b) ..........................................................................................................5

Fed. R. Civ. P. 10(c) .......................................................................................................14

Fed. R. Civ. P. 12(b)(1) ....................................................................................................6

Fed. R. Civ. P. 12(b)(6) .................................................................................................1, 6

U.S. Const. art. III, § 1 ..................................................................................................7, 9

## I.    INTRODUCTION AND BACKGROUND

Rather than respond to The Folger Coffee Company's ("Folgers") motion to dismiss, Plaintiff Marcia Sorin ("Plaintiff") opted instead to amend her pleadings. However, the allegations in her First Amended Complaint ("FAC") fail to remedy the fundamental flaws in Plaintiff's theory. To avoid dismissal, Plaintiff now claims to rely on "findings" from a purported "expert chemist." But this "chemist" appears to have simply weighed tablespoons of coffee grounds of only three varieties (on what looks like a kitchen counter) and applied a mathematical equation premised on a fundamental misunderstanding of the product labels. At bottom, the allegations in the FAC have not materially changed from those in the original complaint. Folgers once again moves this Court for an order dismissing Plaintiff's FAC in its entirety and with prejudice under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

Plaintiff, a resident of Palm Beach County, brings this action "on behalf of herself and all other . . . consumers within the State of Florida who purchased the three Folgers Coffee Products . . . which contained the Folgers Label Claims. . . ." ECF No. 21, FAC ¶ 35. Plaintiff limits her claims to the three products she says she purchased: Folgers Classic Roast, Folgers Black Silk, and Folgers Classic Decaf. *Id.* ¶ 7. She claims that she "used the coffee but has retained canisters of each type that have not been completely consumed." *Id.* What she does not allege is that she used the product and was *unable* to make the number of cups of coffee on the product labels.

For each of the three products she allegedly purchased, she claims that the canister "prominently states on the front label that it 'MAKES UP TO'" a certain number of 6 fluid ounce cups. *Id.* ¶¶ 11, 14, 17. According to Plaintiff, Folger "affirmatively represents on the coffee can label the expected number of cups of coffee that the can will produce when the coffee is brewed according to instructions," but she alleges "this information is false because" she thinks "the can

does not contain enough coffee to produce anywhere near the number of cups represented." *Id.* ¶ 2. As an example of the Folgers coffee products, Plaintiff provides pictures of the front label of a Classic French Roast canister and the back label of a Folgers Classic Decaf "illustrated" in the FAC—but ***not the canisters purchased by her***. *See id.* ¶¶ 21-22.

Based on this, Plaintiff brings a single claim under Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), seeking damages, injunctive relief, and attorneys' fees and costs. *See id.*, § Prayer for Relief.

Plaintiff's theory of the case is demonstrably wrong. Her theory is that "***if*** the back-panel instructions are followed, the canister only produces approximately 267 six fluid-ounce servings." FAC ¶ 12 (emphasis added). What Plaintiff refers to as "instructions" are the words printed "on the back of the panel of the canister," which Plaintiff adds to the FAC but describes out of context by saying, "Instructions on the back panel of the canister direct consumers to use the following measurements: 'Cold Water: 1 Serving (6 fl. oz)' with 'Folgers Coffee: 1 Tablespoon' which yields '1 Serving (6 fl. oz.)'" *Id.* ¶¶ 11, 14, 17 (hereinafter Plaintiff's "1:1 ratio"). Because of these supposed "instructions," Plaintiff says that "[t]his means that each Classic Roast canister should contain 380 tablespoons of coffee." *Id.*

Plaintiff attempts to bolster her allegations by explaining that an "expert chemist" measured the coffee grounds in each product, and based on this measurement (which appears to have been conducted on someone's kitchen counter), calculated how many tablespoons are in the canisters based on the advertised net weight. *Id.* ¶¶ 20, 25.

But if the Court looks at the canisters in the FAC, as it can and should,[1] it will see that **nothing on the canisters** states that they contain a certain number of tablespoons of coffee, as Plaintiff claims:



FAC ¶ 22. The only thing Folgers actually represents on the canister is noticeably absent in the FAC—and that is that the "canister makes **up to** 380 suggested strength 6 fl oz servings." Nowhere in the FAC is there any allegation that the Folgers' canisters are **incapable** of making up to the number of suggested strength servings, as Folgers represents. For this reason, the FAC should be dismissed because the only representation that Folgers actually makes is clearly disclosed on the package and not even challenged in the FAC. *See Kuenzig v. Kraft Foods, Inc.*, 2011 WL 4031141,

---

[1] This court may consider the labels of the canister "without converting the motion into one for summary judgment" because the labels' "contents are alleged in a complaint and no party questions those contents." *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).

at *9 (M.D. Fla. Sept. 12, 2011) (finding label was not misleading as a matter of law where the number of calories from fat was clearly disclosed on the nutrition panel).

Plaintiff's allegations that the products yield less than the advertised number of suggested strength servings is based on supposed "instructions" that "direct consumers to use" Plaintiff's 1:1 ratio. *See id.*, ¶¶ 11, 14, 17. Plaintiff concludes that reasonable consumer would expect each canister to contain the exact same number of tablespoons of ground coffee as the advertised number of possible servings. *Id.*

But Plaintiff's 1:1 ratio for making coffee is not actually on the package and is not recommended by Folgers at all. There are no "instructions" directing consumers to—or suggesting that consumers can—make "380 suggested strength 6 fl oz servings" by using Plaintiff's 1:1 ratio of 1 serving of 6 fluid ounces and 1 tablespoon of coffee. Instead, the canister has **recommendations** "[f]or best brewing results," and Folgers states that "we recommend" using certain fluid ounces of cold water and ground coffee per serving. *See id.* ¶ 22. And a recommendation is just that since all coffee drinkers have different preferences for the strength of their coffee. Moreover, these recommendations state that 10 servings of 6 fluid ounces can be achieved with ½ cup of coffee, which makes it clear that **as more water is added, less grounds are required.** *See id.* ¶ 22. Thus, the packaging confirms that ***Plaintiff's 1:1 ratio*** (that she is trying to impose on Folgers as instructing consumers) ***comes from whole cloth***. Plaintiff is wrong and the FAC must be dismissed because Plaintiff cannot pursue FDUTPA claims based on her subjective misconception that is belied by a plain reading of Folgers' labels and packaging. *Cf. Savalli v. Gerber Prods. Co.*, 2016 WL 5390223, at *1 (S.D. Fla. Sept. 20, 2016) (noting that under FDUTPA, "reasonable consumers should—well, read the label").

4

Plaintiff has offered no plausible explanation why or how her supposed injury can be explained by Folgers' recommendations as opposed to "obvious alternative explanations," *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 567 (2007)—such as the fact that the recommendations do not say that a 1:1 ratio is needed to make 380 suggested strength servings. She ignores the requirements of Rule 8 (in addition to Rule 9(b)) and provides no factual enhancement to explain how Folgers' suggestions are wrong. She simply expects this Court to speculate that Folgers' instructions caused her some harm. "But [this Court is] not permitted to engage in speculation, even at the pleading stage." *Auto. Alignment & Body Serv., Inc. v. State Farm Mut. Auto. Ins. Co.*, 953 F.3d 707, 729 (11th Cir. 2020). Thus, this case should be dismissed on the merits because the FAC is implausible.

Even aside from being implausible, however, the FAC also suffers from standing deficiencies. This is because Plaintiff is relying on someone else's testing of different Folgers' Products, *but not her own use of the specific canisters of Folgers Coffee she claims she purchased.* And there is no allegation that *Plaintiff's specific canisters* cannot make the advertised number of cups of coffee. Courts have found the failure to make such allegations to be fatal. *See, e.g.*, *Meyer v. Colavita USA Inc.*, 2011 WL 13216980, at *5 (S.D. Fla. Sept. 13, 2011) (dismissing complaint when, like here, the "Plaintiffs support their claims with speculation and unwarranted extrapolation from [a] … [third party]'s findings").

Plaintiff has also failed to allege a concrete injury. Plaintiff is expressing subjective disappointment about her "expected number of cups of coffee that the can will produce when the coffee is brewed according to instructions." FAC ¶ 2. There is no standing for such subjective disappointment—and FDUTPA would not allow such a recovery in any event. *Cf. Koronthaly v. L'Oreal USA, Inc.*, 374 F. App'x 257, 259 (3d Cir. 2010); *Marketran, LLC v. Brooklyn Water*

*Enters., Inc.*, 2017 WL 1292983, at *3 (S.D. Fla. Jan. 31, 2017) (Dimitrouleas, J.) (no FDUTPA recovery "for subjective feelings of disappointment").

Plaintiff has also not alleged a concrete injury because she does not allege what she paid for her canisters. She says the Folger Coffee Roast "was advertised by on Walmart.com on September 13, 2020 at $9.96" the day before she filed the FAC, but she fails to allege that she actually paid that price. *See* FAC ¶ 7. Thus, she "has failed to plead any facts from which one could plausibly infer the degree to which, or even whether, the market value of any product has changed as a result of [Folgers'] purported conduct." *QSGI, Inc. v. IBM Glob. Fin.*, 2012 WL 1150402, at *5 (S.D. Fla. Mar. 14, 2012).

Finally, Plaintiff lacks standing to sue on behalf of the class because she has not alleged future harm. She has conceded she will not buy the product in the future given her current allegations and is therefore foreclosed from seeking relief on behalf of a class. *See Dapeer v. Neutrogena Corp.*, 95 F. Supp. 3d 1366, 1374 (S.D. Fla. 2015).

For all these reasons, the FAC should be dismissed in its entirety and with prejudice.

## II.   LEGAL STANDARDS

"Because standing is jurisdictional, [a motion to dismiss] falls under Federal Rule of Civil Procedure 12(b)(1)." *Stalley ex rel. U.S.* v. *Orlando Reg7 Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008). Plaintiffs "must establish that they have standing to sue." *Remedios* v. *Nat'l Fire & Marine Ins. Co.,* 2019 WL 7956170, at *4 (S.D. Fla. Aug. 29, 2019) (citation omitted). "To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must allege both a cognizable legal theory and sufficient facts to support it." *Goldin v. Boce Grp., L.C.*, 773 F. Supp. 2d 1376, 1378 (S.D. Fla. 2011). "[A] plaintiff's obligation to provide the 'grounds' of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of

action will not do." *Twombly*, 550 U.S. at 555. Rather, "[a] complaint must contain sufficient factual matter accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Further, while leave to amend "'should be freely given when justice so requires,' . . . a court may properly deny leave to amend where amendment would be futile." *Degirmenci v. Sapphire-Fort Lauderdale, LLLP*, 693 F. Supp. 2d 1325, 1352 (S.D. Fla. 2010) (Dimitrouleas, J.) (finding leave to amend would be futile) (quoting *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1262–63 (11th Cir. 2004)).

## III.    ARGUMENT

Plaintiff's FAC should be dismissed on the merits because she does not plausibly allege Folgers' packaging is misleading to a reasonable consumer. Even so, Folgers will first address Plaintiff's lack of standing because "[s]tanding is . . . a 'threshold jurisdictional question' that must be resolved before a court can turn to a claim's merits." *Irizarry v. Orlando Utils. Comm'n*, 393 F. Supp. 3d 1110, 1113 (M.D. Fla. 2019) (quoting *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974 (11th Cir. 2005)).

### A.    Plaintiff Lacks Article III Standing

"[T]o establish her standing to sue, a plaintiff must satisfy three (by now familiar) criteria." *Lewis v. Governor of Alabama*, 944 F.3d 1287, 1296 (11th Cir. 2019). But Plaintiff once again fails to "demonstrate that she has suffered an 'injury in fact'—an invasion of a legally protected interest that is both (a) 'concrete and particularized' and (b) 'actual or imminent, not conjectural or hypothetical.'" *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

1.      **Plaintiff cannot rely on purported "expert" testing or consumer complaints to allege a particularized injury for herself**

Plaintiff alleges that she "purchased three Folgers product varieties," and that she "has used the coffee" but "retained canisters of each type that have not been completely consumed." FAC ¶ 7. However, "[f]or an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (citations omitted). Plaintiff does not provide a single allegation about the amount of coffee *her specific canisters produced.* Instead, she speaks vaguely about what she thinks theoretically happens "*if* the back-panel instructions are followed." *See, e.g.*, FAC ¶¶ 12-13, 15-16, 18-19. If Plaintiff actually used or tested the specific canisters *she purchased*, then surely, she would be able to allege exactly how many cups her canisters produced. She has tellingly not done so or made any allegations to draw that inference, despite the fact that Folgers raised this exact same deficiency in its last motion to dismiss. *See* ECF No. 17 at p. 8.

Instead, she attempts to remedy this glaring deficiency by alleging that "Plaintiff's expert examined each relevant variety," and based on this purported "expert" testing, she concludes that "the canisters simply do not contain enough coffee to produce the promised number of cups at the suggested strength." FAC ¶ 20. She further alleges that *other* consumers have expressed dissatisfaction with the products. *Id.* ¶ 27. But allegations about someone else's testing of *different canisters* yielding different ranges of cups, does not make up for the fact that there is no allegation that *Plaintiff's canisters* were, in fact, mislabeled. There is no allegation in the FAC that Plaintiff's specific canisters cannot make the number cups of coffee represented on the labels. And courts in this district and around the country have found that the failure to make allegations about *the plaintiff's specific product* is fatal. *See, e.g.*, *Meyer*, 2011 WL 13216980, at *5 (dismissing complaint when, like here, the "Plaintiffs support their claims with speculation and unwarranted

extrapolation from [a] … [third party]'s findings"); *Green v. CLP Corp.*, 2006 WL 8436822, at *8 n.14 (N.D. Ala. Mar. 28, 2006) (finding it "persuasive that 'parroting legal principles or an expert's conclusions is insufficient to prove a concrete, individualized injury as is required to support standing.'" (quoting *Frotton v. Barkan*, 236 F. Supp. 2d 92 (D. Mass. 2002)); *Gaminde v. Lang Pharma Nutrition, Inc.*, 2019 WL 1338724, at *2–3 (N.D.N.Y. Mar. 25, 2019) (explaining that "standing requires that 'the plaintiff must have suffered an 'injury in fact . . . which is . . . *particularized*'" and finding that the plaintiff's "failure to allege that . . . *his bottle*" of a product was "tested . . . is fatal" (emphasis added) (citations omitted)).

> **2.      Plaintiff cannot pursue claims for which she has not alleged a cognizable injury—her disappointment and made-up price premium are not enough**

Plaintiff's failure to demonstrate a particularized injury is only the beginning of her problems because particularization alone "is not sufficient"—"an injury in fact must also be 'concrete,'" which means it "must be '*de facto*'; that is, it must actually exist" and must be "'real,' and not 'abstract.'" *Spokeo*, 136 S. Ct. at 1548 (citations omitted).

Plaintiff's damages theory is based on subjective disappointment about her "expected number of cups of coffee that the container will produce when the coffee is brewed according to instructions." FAC ¶ 2. But "disappointment . . . fail[s] to allege 'an invasion of a legally protected interest.'" *Eike v. Allergan, Inc.*, 850 F.3d 315, 318 (7th Cir. 2017) (citations omitted); *see also Finkelman v. NFL*, 810 F.3d 187, 188–89 (3d Cir. 2016) ("Article III requires more" than "the disappointment of wanting to attend a concert or athletic event only to discover that the event has sold out."); *Koronthaly*, 374 F. App'x at 259 (find that the plaintiff "asserted only a subjective allegation that the trace amounts of lead in the lipsticks are unacceptable to her, not an injury-in-fact sufficient to confer Article III standing."); *Hillen v. Blistex, Inc.*, 2017 WL 2868997, at *3 (N.D. Ill. July 5, 2017) ("Put simply, plaintiff's disappointment in defendant's [product] design

does not establish deception . . . ."). Even if there were standing, FDUTPA would not allow a recovery. *See Marketran*, 2017 WL 1292983, at *3 (Dimitrouleas, J.) ("FDUTPA does not provide for . . . compensation for subjective feelings of disappointment.").

In addition, Plaintiff was required to allege a "difference in the market value of the product . . . .in the condition in which it was delivered and its market value in the condition in which it should have been delivered" because "the Act 'does not provide for the recovery of . . . speculative losses.'" *Reilly v. Chipotle Mexican Grill, Inc.*, 711 F. App'x 525, 529 (11th Cir. 2017) (citation omitted). Yet Plaintiff does not allege how Folgers sold the products at a premium price, above similar products in the marketplace that do not claim to be capable of brewing 380 6-fluid-ounce cups of coffee. She does not even allege what price she purportedly paid for the products. FAC ¶¶ 3, 7. Thus, Plaintiff fails to "set forth any facts demonstrating how [she] ha[s] been aggrieved or what damages [she] suffered"—"[f]or example, Plaintiff[] do[es] not plead facts demonstrating *that [she] paid* 'X' dollars for what [she] thought was [a good product] that in fact turned out to be [a bad product] worth 'Y' dollars." *Meyer*, 2011 WL 13216980, at *5 (emphasis added). Without an allegation estimating "the difference in value," which she has not made, Plaintiff has not alleged an "actual loss." *Reilly*, 711 F. App'x at 529. Thus, her claim is based on disappointment and not any actual economic injury and, therefore, cannot proceed.

### 3. Plaintiff cannot pursue injunctive relief on behalf of herself or the putative class because she fails to allege a likelihood of future injury

Finally, Plaintiff lacks standing to pursue claims for injunctive relief because it is well-established that a plaintiff cannot pursue a claim for injunctive relief under FDUTPA when she fails to allege a threat of future harm. *See In re Monat Hair Care Prods. Mktg., Sales Practices, & Prods. Liab. Litig.*, 2019 WL 5423457, at *5 (S.D. Fla. Oct. 23, 2019). Folgers raised this argument

in its first motion to dismiss (ECF No. 17 at p. 12), and yet Plaintiff made no attempt to remedy this deficiency—presumably because she cannot.

The injury-in-fact requirement "cannot be met absent a showing of a real or immediate threat that the plaintiff will be wronged again." *Marty v. Anheuser-Busch Cos., LLC*, 43 F. Supp. 3d 1333, 1355 (S.D. Fla. 2014). Nowhere does Plaintiff allege that she will continue to purchase the product. Nor would that be reasonable to infer given the fact that she believes Folgers is "short-changing its customers by a significant amount." FAC ¶ 11. Plaintiff's silence about purchasing the product in the future is "effectively a concession that she does not intend to purchase the product in the future." *Parks v. Ainsworth Pet Nutrition, LLC*, 377 F. Supp. 3d 241, 249 (S.D.N.Y. 2019) (citation omitted); *see also Cordes v. Boulder Brands USA, Inc*., 2018 WL 6714323, at *4 (C.D. Cal. Oct. 17, 2018). Thus, the Court should dismiss the claim for injunctive relief. *See Dapeer*, 95 F. Supp. 3d at 1374 ("[Plaintiff] . . . fails to sufficiently allege a threat of future harm . . . . Accordingly, Plaintiff's claims for injunctive relief are dismissed."); *Marjam Supply Co. of Fla., LLC v. Pliteq, Inc.*, 2018 WL 4932871, at *4 (S.D. Fla. Apr. 23, 2018) (same).

**B.    The FAC Fails on the Merits Because Plaintiff's Theory Is Implausible**

Even if Plaintiff could somehow show that she has standing, it would make no difference because the merits of her claim are implausible and inadequately pleaded. Plaintiff's single FDUTPA claim is flawed because, at bottom, she fails to show how the representations on Folgers' packaging are deceptive—let alone false.

**1.    The FAC is implausible because it is based on a false premise and asks the Court to engage in speculation and ignore obvious alternative explanations**

Putting Plaintiff's inadequate pleading to the side, the FAC should also be dismissed because it is demonstrably false and asks this Court to ignore obvious alternative explanations.

Plaintiff's claims are premised on three products: Folgers Classic Roast, which "states on the front label that it 'MAKES UP TO 380 6 FL OZ CUPS'" (FAC ¶ 11); Folgers Black Silk, which "states on the front label that it 'MAKES UP 210 TO 6 FL OZ CUPS'") (*id.* ¶ 14); Folgers Classic Decaf, which "states on the front label that it 'MAKES UP TO 240 6 OZ CUPS.'" *Id.* ¶ 17. Each canister also provides the net weight in ounces and grams on the front label.

Plaintiff's theory is that "if the back-panel instructions are followed, the [Folgers Classic Roast] canister only produces approximately 267 six fluid-ounce servings." FAC ¶ 12; *see also id.* ¶¶ 15, 18. She says Folgers' "instructions" direct consumers to use Plaintiff's 1:1 ratio—or 380 tablespoons of coffee—to make 380 suggested strength cups. *Id.* ¶ 11; *see also id.* ¶¶ 14, 17. She further claims that to "brew 10 servings," consumers are directed to use a "½ measuring cup of Folgers coffee," which she says is "actually 8 tablespoons." *Id.* ¶ 13; *see also id.* at ¶¶ 16, 19.

Plaintiff alleges that an "expert examined each relevant variety and discerned the . . . gram weights per tablespoon" for each. *Id.* ¶ 20. And it is based on these supposed "instructions," and the weight of a tablespoon of coffee grounds, that Plaintiff claims Folgers' canisters supposedly produce "over 113 cups short of what Folgers represents." *Id.* ¶ 12; *see also id.* at ¶¶ 15, 18.

But as discussed above, ***nothing on the canister*** states the canister contains the same number of tablespoons of coffee as the possible number of servings, and nowhere in the FAC is there any allegation that the Folgers products are *incapable* of making "up to" the represented number of servings, which is the only thing Folgers actually represents on the canister:



*See e.g.*, FAC ¶ 22 (images of back label of Folgers Classic Decaf). Plaintiff's theory is fundamentally flawed and requires dismiss of her FAC with prejudice.

First, the so-called "instructions" Plaintiff talks about are actually nothing but recommendations for "best results" that clarify it will *not* take 380 tablespoons of coffee to make up to the 380 servings. The label recommends that 10 servings of 6 fluid ounces be made with ½ measuring cup of coffee. In other words, **more water means less coffee grounds**. Plaintiff's complaint that "[t]his alternative method . . . produces . . . *diluted* coffee," (FAC ¶ 122 (emphasis in original)), reveals yet another flaw in her theory. As an initial matter, Plaintiff provides no factual support for her conclusion that brewing coffee with these measurements results in diluted or weak coffee. Indeed, preferred coffee strength is subjective and differs from consumer to consumer. Consumers can vary the level of dilution of their coffee to suit their taste. Which is precisely why the product label states that "this canister makes ***up to 380 suggested strength*** 6 fl oz servings"—not 380 under all circumstances at the highest strength that a consumer may prefer.

Second, the canister label makes clear that the recommendations do not necessarily correlate with a tablespoon measurement. To the contrary, the back label shows that a tablespoon may be used for a single serving, however, a measuring cup is used for larger batches of coffee. As Plaintiff herself acknowledges, the number of tablespoons in a ½ measuring cup is "not commonly known to the general public." FAC ¶ 13. Moreover, the label does not make any representation as to how many tablespoons are in each canister, nor do consumers measure their coffee exclusively with tablespoon measurements.

Accordingly, Plaintiff is wrong. Even though this Court has a "duty to accept the facts in the complaint as true," that "does not require [the Court] to ignore specific factual details of the pleading in favor of general or conclusory allegations"—especially "when," as here, "the exhibits contradict the general and conclusory allegations of the pleading." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007) (citation omitted). Here, the label incorporated into the FAC is "to be treated as part of the complaint for all purposes under Rule 10(c)," and because the label reveals adverse "facts which foreclose recovery as a matter of law, dismissal is appropriate." *Id.* (citation omitted). Stated otherwise, the truth of the label sinks Plaintiff's claim.

The FAC should be dismissed because the only representation that Folgers actually makes is clearly disclosed on the package and not even challenged. *See Kuenzig*, 2011 WL 4031141, at *9 ("Because the number of calories that come from fat is clearly disclosed in the nutrition panel on Kraft's labels, the Court finds that as a matter of law, Kraft's labeling is not misleading regarding the number of calories that come from fat in its products.") (collecting cases). Beyond that, the FAC should be dismissed because Plaintiff has offered no plausible explanation why or how her "injury" was caused by Folgers' recommendations, as opposed to other, innocuous

14

"obvious alternative explanations," *see Twombly*, 550 U.S. at 567—like the fact that the recommendations do not say that that a 1:1 ratio is needed to make the 380 suggested servings.

Plaintiff provides nothing to explain how Folgers' suggestions are wrong. She just expects this Court to speculate that Folgers' recommendations *must* have harmed her. "But [this Court is] not permitted to engage in speculation, even at the pleading stage." *Auto Alignment*, 953 F.3d at 729. Thus, this case should be dismissed on the merits because it is implausible on its face. *See id.* at 728–29 (dismissing case with this explanation: "The body shops offer no allegations that explain why the loss . . . they allege is plausibly explained by steering instead of other 'obvious alternative explanation[s].' They instead invite us to speculate that steering caused this loss in business. But we are not permitted to engage in speculation, even at the pleading stage." (citation omitted)).[2]

### 2.   Plaintiff's alleged "expert" findings do not remedy the fatal flaw in her theory

Plaintiff's theory remains unchanged and her amendments do nothing to resuscitate claims that were dead on arrival. In an effort to avoid dismissal, she claims that her allegations are based on findings of an "expert chemist," who purportedly concluded that "Folgers is short-changing its customers by a significant amount." FAC ¶ 11; § Amended Class Action Complaint. Plaintiff claims that this "expert chemist" "examined each relevant variety and discerned the [] gram weight per tablespoon" for each canister. *Id.* ¶ 20. It appears that the only thing this "expert chemist" actually did, however, was to weigh a tablespoon of coffee grounds in a generic food scale on someone's kitchen counter. *Id.*; *see also id.* ¶ 24 (alleging that the "expert" "calculated the exact

---

[2] *See also Iqbal*, 556 U.S. at 679, 682 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense" and choose "between [an] 'obvious alternative explanation' for [conduct] and the [conduct a plaintiff] asks us to infer") (citation omitted); *Twombly*, 550 U.S. at 567–68, 570 (accepting "an obvious alternative explanation" when, as here, "the complaint itself gives reasons to believe" the alternative explanation, and dismissing case because the plaintiff had not pleaded "enough facts to state a claim to relief that is plausible on its face"); *see also Carruth v. Bentley*, 942 F.3d 1047, 1062 (11th Cir. 2019).

gram weight per tablespoon for reach variety"). Plaintiff then alleges that the purported "expert" used the weight of a tablespoon of ground coffee to calculate how many tablespoons are in each canister based on the advertised grams of grounds in each. *Id.* ¶¶ 20, 25. In other words, Plaintiff's "expert" only purports to have determined how many tablespoons of ground coffee are in each canister.

However, as discussed above, the number of tablespoons in a canister of coffee does not dictate whether the canister can make "up to" a specific number of suggested strength servings. *See infra* § III.B.1. Thus, Plaintiff's reliance on an "expert" reveals the fundamental flaw in her theory requiring dismissal.

### 3. Based on the FAC's flaws, Plaintiff's FDUTPA claim fails on its face

In light of these pleading failures, the FAC clearly fails to state a claim under FDUTPA. "A consumer claim for damages under FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *World Fuel Servs., Inc.* v. *Thrifty Propane, Inc.*, 2016 WL 11547771, at *10 (S.D. Fla. July 15, 2016) (citation omitted).

Plaintiff has failed to allege a deceptive or unfair trade practice. Deception occurs when there is "a material representation or omission that is likely to mislead consumers acting reasonably under the circumstances." *In re Motions to Certify Classes Against Court Reporting Firms for Charges Relating to Word Indices*, 715 F. Supp. 2d 1265, 1281 (S.D. Fla. 2010) (internal quotation marks and citation omitted), *aff'd*, 2011 WL 3822001 (11th Cir. Aug. 31, 2011). By contrast, an "unfair" practice is one that "causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition." *Id.* at 1277 (internal quotation marks and citation omitted). Neither is present here.

"FDUTPA does not require companies to be wholly transparent or prohibit them from publishing facts in the light most conducive to business, as long as the publication is not probably deceptive and likely to cause injury to a reasonably relying consumer . . . ." *Casey v. Fla. Coastal Sch. of Law, Inc.*, 2015 WL 10096084, at *15 (M.D. Fla. Aug. 11, 2015). A deceptive practice is one that is "likely to mislead." *Davis v. Powertel, Inc.*, 776 So. 2d 971, 974 (Fla. Dist. Ct. App. 2000). The Florida Supreme Court has noted that "deception occurs if there is a representation, omission, or practice that is likely to mislead *the consumer acting reasonably in the circumstances*, to the consumer's detriment.'" *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003) (internal quotation marks and citation omitted) (emphasis added). "This standard requires a showing of 'probable, not possible, deception' that is 'likely to cause injury *to a reasonable relying consumer*.'" *Zlotnick v. Premier Sales Grp., Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007) (citation omitted) (emphasis added). This Court is not concerned about the hypersensitive or litigation-driven plaintiff like Plaintiff in this case.

Here, Plaintiff fails to allege a deceptive or unfair trade practice because the FAC does not show that any labeling representation is false or misleading—especially to a reasonable consumer. There is no deception here and Plaintiff would know that had she just read the full label. *See Kuenzig*, 2011 WL 4031141, at *9 ("Because the number of calories that come from fat is clearly disclosed in the nutrition panel on Kraft's labels, the Court finds that as a matter of law, Kraft's labeling is not misleading . . . ."); *cf. Savalli*, 2016 WL 5390223, at *1 ("harbor[ing] serious doubts about the plausibility of Plaintiff's claims (that is, whether a reasonable consumer would likely be confused by the labeling on Defendant's product)" because "to understand what they are purchasing, reasonable consumers should—well, read the label").

Nothing in the FAC plausibly alleges that the product is incapable of producing "up to" the advertised cups of coffee. Instead, Plaintiff's claim that "if the back-panel instructions are followed, the canister only produces approximately 267 six fluid-ounce servings," *id.* ¶ 12, is premised on an "expert" calculation of the number of tablespoons in the canister. But, as discussed above, this is a demonstrably inaccurate interpretation of the brewing recommendation. She does not allege that either she or her "expert" used the product and discovered that it is incapable of producing "up to" the advertised number of cups of coffee. Moreover, Plaintiff does not allege that a reasonable consumer would fail to understand that, given the "up to" language, varying methods of brewing the product and differing batch sizes could create more cups of coffee per package. Plaintiff does not allege how or why a reasonable consumer would fail to read the label and conclude that the canister contained 380 tablespoons of coffee, or that a 1:1 ratio was required to make as many cups of coffee. She does not allege how or why a reasonable consumer would materially care—let alone fail to understand—that the "up to" language indicates a range based on consumer preference. After all, as the label explains, consumers have the ability to choose how they make coffee at their preferred level of coffee strength. It makes *recommendations* so consumers can vary the level of dilution for how they like their coffee. *See* FAC ¶ 22; *see also id.* ¶ 26 (citing Folgers' explanation on truthinadvertising.com that the amount of coffee grounds used is "based on personal preference, which would have an impact on the number of cups a canister will yield"). Plaintiff provides absolutely no explanation why a reasonable consumer would interpret "this canister makes up to 380 suggested strength 6 fl oz servings" to somehow mean 380 under all circumstances at the highest strength. *Id.* ¶ 22.

In short, Plaintiff's conclusory allegations that Folgers engaged in deceptive, unfair, or unconscionable actions are insufficient to state a claim under FDUTPA. *See Merrill Lynch Bus.*

*Fin. Servs., Inc. v. Performance Mach. Sys. U.S.A., Inc.*, 2005 WL 975773 at *9 (S.D. Fla. 2005) ("To reiterate for emphasis, [plaintiffs] must do more than merely recite conclusory allegations; they must allege facts which properly raise recognizable FDUTPA claims."). "To state a cause of action under FDUTPA, a plaintiff must do more than merely allege in a conclusory fashion that a defendant's actions constituted an 'unfair or deceptive act' or that the defendant acted 'wrongfully, unreasonably and unjustly' and for a 'deceptive and improper purpose.'" *Infinity Global, LLC v. Resort at Singer Island, Inc.*, 2008 WL 1711535 at *4 (S.D. Fla. Apr. 10, 2008) (citation omitted). Plaintiff's FDUTPA claim does not do so, is inadequately pleaded, and should be dismissed.

Finally, even if she had pleaded deception, FDUTPA only allows recovery for actual damages. *See, e.g.* Fla. Stat. § 501.211; *Smith v. 2001 S. Dixie Highway, Inc.,* 872 So. 2d 992, 993 (Fla. Dist. Ct. App. 2004); *City First Mortg. Corp. v. Barton*, 988 So. 2d 82 (Fla. Dist. Ct. App. 2008). "Actual damages" is a "term of art." *QSGI*, 2012 WL 1150402, at *4 (citation omitted). It refers to "the difference in the market value of the product . . . in the condition in which it was delivered and its market value in the condition in which it should have been delivered." *Smith*, 872 So. 2d at 994. As discussed above, Plaintiff's loss is speculative and based on her disappointment and therefore unrecoverable. *See Marketran*, 2017 WL 1292983, at *3 (no recovery for "subjective feelings of disappointment"). And when, as here, a plaintiff "fails to allege a recoverable loss under FDUTPA, the complaint fails to state a claim." *Rodriguez v. Recovery Performance & Marine, LLC*, 38 So. 3d 178, 180 (Fla. Dist. Ct. App. 2010).

### C.      Dismissal Should Be with Prejudice

When "a more carefully drafted complaint could not state a claim, amendment is futile and not required." *Colston v. Schiller*, 2020 WL 687599, at *2 (N.D. Fla. Jan. 8, 2020) (citing *Johnson v. Boyd*, 568 F. App'x 719, 723 (11th Cir. 2014)). Here, Plaintiff has already amended her

complaint once and therefore, dismissal with prejudice is warranted. Given the facts alleged, even with a more carefully drafted FAC, Plaintiff cannot state a claim against Folgers because she cannot make an otherwise true statement false. Thus, dismissal should be with prejudice because any amendment to the FAC would be futile.

## IV.    CONCLUSION

For these reasons, the FAC should be dismissed in its entirety with prejudice.

## V.    REQUEST FOR TELEPHONIC HEARING

Folgers respectfully requests a telephonic hearing on this motion of approximately 30 minutes to one hour to address the Court's questions.

Date:   November 6, 2020                          Respectfully submitted,

*/s/ Cristina Calvar*

Cristina Calvar (Florida Bar No. 114201)
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, NY 10166-4193
Telephone: (212) 294-5331
Facsimile: (212) 294-4700
ccalvar@winston.com

Ronald Y. Rothstein (*pro hac vice*)
Sean H. Suber (*pro hac vice*)
**WINSTON & STRAWN LLP**
35 W. Wacker Drive
Chicago, IL 60601
Telephone: (312) 558-5600
Facsimile: (312) 558-5700
rrothste@winston.com
ssuber@winston.com

Megan L. Whipp (*pro hac vice*)
**WINSTON & STRAWN LLP**
333 S. Grand Avenue
Los Angeles, CA 90071-1543
Telephone: (213) 615-1700
Facsimile: (213) 615-1750
mwhipp@winston.com

*Counsel for Defendant*
*The Folger Coffee Company*