## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

-----------------------------------------------------x

MARCIA SORIN, individually and on
behalf of all others similarly situated,

                          Case No.: 9:20-cv-80897-WPD

          Plaintiff,                  **JURY TRIAL DEMANDED**

        vs.

THE FOLGER COFFEE COMPANY, a
subsidiary of the J. M. SMUCKER
COMPANY,

         Defendant.

-----------------------------------------------------x

## SECOND AMENDED CLASS ACTION COMPLAINT

Marcia Sorin ("Plaintiff" or "Sorin"), on behalf of herself and all others similarly situated (the "Class Members"), brings this second amended consumer class action complaint against Defendant The Folger Coffee Company ("Defendant" or "Folgers"), for unlawful, unfair, and deceptive business practices in violation of Florida Deceptive and Unfair Trade Practices Act (the "FDUTPA"). Plaintiff's allegations are based on the investigation of counsel, and the findings of Plaintiff's expert chemist, and are based on information and belief, except as to the allegations pertaining to Plaintiff individually, which are based on personal knowledge.

## NATURE OF THE ACTION

1.     Folgers coffee is a household name with sales comprising a significant portion of the $7.8 billion in net revenues reported by corporate parent, The J.M. Smucker Company, during its last fiscal year. It is estimated that Folgers has nationwide sales of approximately $1 billion. The coffee giant engages in false and deceptive package labeling on its brewed coffee containers (the "Folgers Coffee Products"), including, but not limited to Folgers Classic Roast, Folgers

1

Classic Decaf, and Folgers Black Silk with respect to the promised number of coffee servings contained in the package.  Folgers misrepresents the number of servings its containers can provide in order to spur sales and disadvantage competitors who do not make similar inflated servings content claims.  As a result, Florida consumers overpay, as they do not receive the number of coffee servings Folgers represents to be present in the container when using the recommended 1 tablespoon (approximately 5 grams) of the Product, to the detriment of the consumer.  This consumer deception hits senior citizens and individuals on a limited budget hardest, as they are led to believe they are getting a bargain when they are not.  Short fill deception is meant to make comparison shopping difficult, if not impossible.  Moreover, honest vendors—who do not resort to similar tactics—find themselves driven out of the market or seriously disadvantaged.

2.      In a practice that offends reasonable consumer expectations, Defendant affirmatively represents on the coffee can label the expected number of cups of coffee that the container can produce when the coffee is brewed according to instructions, *i.e.*, 1 tablespoon (approximately 5 grams) of coffee per 6 fluid ounces of water, but this information is false because the can does not contain enough coffee to produce anywhere near the number of cups represented (the "Folgers Label Claims").  Plaintiff's expert has produced a chart that shows the true number of servings contained within each coffee canister using the instructed one tablespoon  of coffee per serving.  *See infra,* ¶ 38.

3.      Thus, the stated coffee cup yield information on the Folgers Coffee Products is deceptive and untrue.  It is no less deceptive and untrue by Defendant's inclusion of the "up to" qualifying language which precedes the stated number of servings.  As construed by the reasonable consumer in the context of the label as a whole, the Folgers Coffee Products produce the represented number of servings if the instructed 5 grams of coffee per 6 ounce cup is used.  If,

however, the consumer desires a stronger brew – *e.g.*, 6 or 7 grams of coffee per cup – the Folgers Coffee Products will produce a lesser number of servings.  However, no reasonable consumer interprets the "up to" qualification to mean that, to achieve the represented number of servings, they will have to use approximately 30% less than the instructed 5 grams per cup (*i.e.*, approximately 3.5 grams (*see infra*, ¶ 38)), yielding a weak, and unpalatable cup of coffee – certainly not worth "waking up to Folgers in your cup".  *Hamilton v. Suntrust Mortg. Inc.*, 6 F. Supp. 3d 1300, 1309 (S.D. Fla. 2014) (issues of fact are generally not appropriate for resolution on a motion to dismiss); *Coleman v. CubeSmart*, 328 F. Supp. 3d 1349, 1361 (S.D. Fla. 2018) ("how a reasonable consumer would interpret a term is an issue of fact") (citing *Jankus v. Edge Investors, L.P.*, 650 F. Supp. 2d 1248, 1258 (S.D. Fla. 2009)).

4.    Plaintiff and Class Members overpaid for the Folgers Coffee Products, as they did not receive (and could not receive) the represented number of servings when brewed using the instructed 5 grams per 6 ounce cup and did not receive the "benefit of the bargain" when purchasing Folgers Coffee Products.  For example, one of the canisters Plaintiff purchased, Folgers Classic Roast, was advertised on Walmart.com on September 13, 2020 at $9.96 for 380 servings ($9.79 if two canisters are purchased), which is roughly 2.6 cents per serving.  But those who buy this product, which yields only about 267 suggested strength servings, are paying roughly 3.7 cents per serving.  Adjusted, the price should be only about $6.94, $3.02 less, or roughly 30% less.  By overpaying in this manner and failing to receive the benefit of the bargain, Plaintiff and Class Members suffered monetary injury.

## JURISDICTION AND VENUE

5.    This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) in that: (1) this is a class action involving more than 100 Class Members;

(2) Plaintiff is a citizen of Florida; Defendant is a citizen of the State of Ohio; and (3) the amount in controversy exceeds the sum of $5,000,000.00, exclusive of interests and costs.

6.       The Court has personal jurisdiction over Defendant because it conducts substantial business in Florida.  Defendant has and continues to actively market, promote, and sell the Folgers Coffee Products in Florida through numerous retailers and online channels, and Defendant has sufficient minimum contacts with this State and/or has sufficiently availed itself of the market in this State through its marketing, promotion, and sales within this State, including sales in the Winn-Dixie and Publix grocery chains, to render the exercise of jurisdiction by this Court permissible.

7.       Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred while Plaintiff resided in this judicial district.

## PARTIES

8.       Plaintiff Marcia Sorin resides in Palm Beach County, Florida.  During the past four years, Plaintiff purchased three Folgers Coffee Product varieties: Folgers Classic Roast, Folgers Black Silk, and Folgers Classic Decaf in local markets, including Publix, containing the Folgers Label Claims.  Plaintiff understood that to get the "up to" stated number of servings, she must follow the directions on the product packages and use 5 grams of coffee per 6 ounce cup.  On those days Plaintiff wanted a stronger cup of coffee and used more coffee than recommended on the label, Plaintiff also understood that she would get proportionately less than the represented number of servings.  Plaintiff did not expect, however, that in order to get the represented number of servings, she would have to use significantly less coffee per cup (almost 30% less), as that would make for a weak and unpalatable cup of coffee providing neither the caffeine nor taste benefits for which coffee is sold.  Had Plaintiff known the truth about the Folgers Label Claims, she would not

have purchased the Folgers Coffee Products, or would not have paid as much for them.  Plaintiff was thus injured in that she overpaid for the Folgers Coffee Products that did not contain the number of servings represented on the label.  Class Members continue to purchase these products, reasonably but incorrectly believing that they contain enough coffee to make the advertised number of 5 gram servings.

9.       The Folgers Label Claims made on the products Plaintiff purchased would deceive an objectively reasonable consumer.

10.       Defendant is a corporation organized and existing under the laws of the State of Ohio, with its headquarters and principal place of business at One Strawberry Lane, Orrville, OH 44667.  Folgers is arguably the most well-known coffee maker in the United States.  The coffee giant excels in offering a wide range of products to customers, including varying flavors, roasts, and strengths of coffee.  Since the early 1990s, it has been the largest-selling ground coffee in the United States. In the 1980s, Folgers' slogan "The best part of waking up is Folgers in your cup!" and the well-associated jingle became recognizable in households across the country, along with the Folgers name.  Folgers generates an estimated $1 billion or more in sales each year, a significant portion of which is derived from sales of the Folgers Coffee Products in Florida.  In 2008, Folgers was acquired by J.M. Smucker from Procter & Gamble for a reported $3 billion.

## FACTUAL ALLEGATIONS

11.       The Specialty Coffee Association – a non-profit, membership-based organization that represents thousands of coffee professionals worldwide, from producers to baristas – recommends that a standard cup of coffee contain 10 grams of coffee per 6 fluid ounces of water.

12.       In its media statements, Defendant recommends 5-10 grams of coffee per cup.

13.     The represented number of servings on the Folgers Coffee Product labels is based on the lowest end of this range, instructing consumers to use 1 tablespoon (approximately 5 grams) of coffee per 6 fluid ounces of water. Defendant promises consumers on the front of its Folgers Coffee Product labels that the products contain enough ground coffee to make "up to" a specific number of servings (which varies based on the size of the product container).  However, even when following Defendant's own instructions on the product package for a cup of coffee that is already mild by industry and Defendant's own standards, the Folgers Coffee Products do not contain enough ground coffee to make anywhere near the number of servings represented by Defendant, whether by number of tablespoons or by weight.

14.     This is directly contrary to the message conveyed by Defendant's Folgers Coffee Product packages when construed as a whole.  The package instructs consumers to use 1 tablespoon (5 grams) of coffee per 6 ounce cup.  If those instructions are followed, the package represents the Folgers Coffee Products could yield the represented number of servings.  If, however, more coffee is used per cup, the "up to" language makes clear that a lesser number of servings will result.

15.     It is also directly contrary to what consumers have been conditioned to believe. Consumers view the "number of servings" presented by a manufacturer on product labels – like the Folgers Label Claims – as akin to a "serving size."  Because consumers associate number of servings with serving size, the FDA has mandated that the serving size of a product match the average portion of a product that an average consumer uses.  21 C.F.R. § 101.9(b)(1); 21 C.F.R. § 101.12(a)(5).

16.     Furthermore, no reasonable consumer, Plaintiff included, reasonably expected that to obtain the represented number of servings they would have to use almost 30% less coffee per

cup, particularly when that would make for a weak, and unpalatable cup of coffee.  *Hamilton*, 6 F. Supp. 3d at 1309 (issues of fact are generally not appropriate for resolution on a motion to dismiss); *Coleman*, 328 F. Supp. 3d at 1361 ("how a reasonable consumer would interpret a term is an issue of fact").

17.     Instead, Plaintiff reasonably understood Defendant's "up to" stated number of servings to mean that, if she followed the directions provided on the product labels by Defendant, she would get the promised number of cups represented on the front of the package.  If she used more coffee than recommended for any given cup – *e.g.*, if she wanted a stronger cup of coffee – Plaintiff understood that she would receive proportionately fewer cups.

18.     The Class members did not receive the promised number of servings, thus depriving them of the benefit of the bargain.

19.     The U.S. Food and Drug Administration ("FDA"), although it does not directly regulate the products at issue here, has considerable expertise regarding how consumers may be misled as to promises regarding maximum portion sizes.  While consumers may differ as to portion preferences, a label is nonetheless misleading if it deviates from the manufacturer's recommended portion.  Thus, for example, in an FDA Warning Letter dated November 30, 2017, the FDA determined that a supplement package was misleading "because the serving size declared on the labels are incorrect. Serving size for a dietary supplement *is the maximum amount consumed per eating occasion as recommended on the product label…*"  (Emphasis added).[1]   Thus, a manufacturer is bound to its consumption  recommendation, and cannot then pivot on its label to a different "serving size" based on  different and more sparing levels of consumption.

---

[1]   *Available at:*   https://quackwatch.org/cases/fdawarning/prod/fda-warning-letters-about-products-2017/truvision/.

20.     In addition, to avoid consumer deception, the FDA has adopted the "probable yield" test which compares the claimed yield to what could be obtained if manufacturer instructions are followed.  Thus, in another Warning Letter, dated September 12, 2019 the agency warned of a violation in that the "product label's listed number of servings per container does not appear to be consistent with the product directions and the probable yield of the prepared product…"[2]

21.     In addition to looking to FDA actions for guidance, the views of the FTC are relevant as well. In determining what constitutes "unfair or deceptive acts" under FDUTPA, considerable weight is accorded to federal interpretations of the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1) ("FTC Act").  *Urling v. Helms Exterminators, Inc.,* 468 So. 2d 451, 453 (Fla. 1st Dist. Ct. App. 1985).  The FTC has stated:

> In general, the Commission will use FDA's serving size or reference amounts customarily consumed, as set forth in FDA's regulations, in its analysis of a claim*. If, however, an advertiser chooses to depict a non-standard serving size in an advertisement, the Commission will require the advertiser to meet the FDA's standard both for the reference amount customarily consumed and for the serving size depicted.*[3]

22.     Thus, under the various regulatory schemes, which reflect expertise in consumer deception, an advertiser cannot select an arbitrary number of servings, attach the phrase "up to" to that imaginary number, and then claim it has not deceived the average consumer who thinks in terms of the manufacturer's recommendation and the amount "customarily consumed" by average consumers.

23.     In essence, if Folgers wished to employ an exaggerated "weak coffee" reference number when promoting its products, it could have avoided misleading its customers by disclosing

---

[2]     *Available at:*   https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/herbal-healer-academy-inc-570957-09122019.

[3]     *Available at:*   https://www.ftc.gov/public-statements/1994/05/enforcement-policy-statement-food-advertising

what number of cups would be produced if the directions on the canister were followed.  But Defendant choose not to do so.

**FOLGERS CLASSIC ROAST**

24.     According to Plaintiff's expert, Folgers is short-changing its customers by a significant amount (*See infra,* ¶ 38).  In Plaintiff's case, for example, a coffee canister she purchased, Folgers Classic Roast, prominently states on the front label that it "MAKES UP TO 380 6 FL OZ CUPS."  According to this canister, it contains 1360 grams.  Instructions on the back panel of the canister direct consumers to use the following measurements: "Cold Water: 1 Serving (6 fl. oz)" with "Folgers Coffee: 1 Tablespoon" which yields "1 Serving (6 fl. oz.)".  Construing the label as a whole and giving a consistent meaning to all representations would lead the reasonable consumer to believe that this recipe produces coffee of "suggested strength", and therefore the same consumer would then expect to be able to produce 380 cups of equally strong coffee, obtained using the same recipe.  *i.e.* the canister should contain 380 tablespoons of ground coffee.

25.     However, if the back-panel instructions are followed, the canister only produces approximately 267 six fluid-ounce-servings, 113 cups short of what Folgers represents on its front panel.  This is a material shortfall that affects the two primary attributes of coffee – taste and strength (caffeine content) – rendering the Folgers Coffee Products weak and unpalatable.

26.     As an alternative, the back label states that to brew 10 servings, add 10 servings of cold water (6 oz. each) and ½  measuring cup of Folgers coffee.  However, ½ measuring cup is actually 8 tablespoons, a fact not commonly known to the general public.  This alternative method in a canister that holds 1360 grams, produces only 334 standard servings of *diluted* coffee, not the 380 cups prominently advertised on the front of the canister.  Thus, even if one were to assume

that every pot of coffee made from the canister was based on a 10 servings recipe, the amount of coffee in the Classic Roast still falls materially short (over 10%) of the representation as to the number of cups which could be made from the canister, and the cups that would be made would be weak and diluted.

### **FOLGERS BLACK SILK**

27.     Folgers Black Silk prominently states on the front label that it "MAKES UP TO 210 6 FL OZ CUPS." According to this canister, it contains 24.2 ounces of ground coffee or 686 grams. Instructions on the back panel of the canister direct consumers to use the following measurements: "Cold Water: 1 Serving (6 fl. oz)" with "Folgers Coffee: 1 Tablespoon" which yields "1 Serving (6 fl. oz.)". Construing the label as a whole means that each Black Silk canister should contain 210 tablespoons of coffee to satisfy the representation on the front label. A reasonable consumer would follow the measurements supplied by the manufacturer to obtain the best results—*i.e*, the "suggested strength."

28.     However, if the back-panel instructions are followed, the canister only produces approximately 149 six fluid-ounce-servings, 51 cups short of what Folgers represents on its front panel – meaning to achieve the "up to 210 6 fl. oz cups," a consumer must substantially deviate from the directed 1 tablespoon (5 grams) per cup and use only about 3.5 grams per cup, yielding a flavorless cup of coffee which is not what reasonable consumers have been led to expect from Folgers brand marketing.

29.     The alternative 10 servings recipe for coffee, in a canister that holds 865 grams, produces only 186 cups of *diluted* coffee, not the 210 cups advertised on the front of the canister. Thus, even if one were to assume that every pot of coffee made from the canister was based on a 10 servings pot, the amount of coffee in the Black Silk canister still falls short of the representation

10

as to the number of cups which could be made from the canister, and the cups that would be made would be weak and diluted.

**FOLGERS CLASSIC DECAF**

30.     Folgers Classic Decaf prominently states on the front label that it "MAKES UP TO 240 6 FL OZ CUPS."  According to this canister, it contains 865 grams.  Instructions on the back panel of the canister direct consumers to use the following measurements: "Cold Water: 1 Serving (6 fl. oz)" with "Folgers Coffee: 1 Tablespoon" which yields "1 Serving (6 fl. oz.)". This means that each Classic Decaf canister should contain 240 tablespoons of coffee to satisfy the representation on the front label.  A reasonable consumer would follow the measurements supplied by the manufacturer to obtain the best results—*i.e*, the "suggested strength."

31.     However, if the back-panel instructions are followed, the canister only produces approximately 181 six fluid-ounce-servings, 59 cups short of what Folgers represents on its front panel. – meaning to achieve the "up to 240 6 fl. oz cups," a consumer must substantially deviate from the directed 1 tablespoon (5 grams) per cup and use only about 3.7 grams per cup, yielding a flavorless cup of coffee not within the reasonable expectation of consumers.

32.     The alternative 10 servings recipe for coffee, in a canister that holds 865 grams, produces only 227 cups of *diluted* coffee, not the 240 cups advertised on the front of the canister. Thus, even if one were to assume that every pot of coffee made from the canister was based on a 10 servings pot, the amount of coffee in the Classic Decaf  canister  still falls short of the representation as to the number of cups which could be made from the canister, and the cups that would be made would be weak and diluted.

//

//

**MEASUREMENT BY WEIGHT**

33.     Moreover, even if one were to follow the instructions based on weight, the Folger

Coffee Products still fall woefully short of what is represented.  The weight of 1 tablespoon of

coffee varies by variety.[4]   Plaintiff's expert examined each relevant variety and discerned the

following gram weights per tablespoon illustrated below. Based on these gram weights, the

canisters simply do not contain enough coffee to produce the promised number of cups at the

instructed strength. (*See* Chart, *infra* ¶ 38):



34.     In each of the Folgers Coffee Products that is the subject this action, the front

panel prominently and conspicuously states the number of cups the canister will produce, as shown

above and in the Classic Decaf and Classic Roast canisters illustrated below and taken from

---

[4] https://espressocoffeeguide.com/how-much-coffee-per-cup/ (noting that 2 tablespoons is 10.6
grams);   https://www.backyardbeans.com/blog/2017/11/1/how-much-coffee-should-i-use   ("1
level tablespoon of beans or grounds is about 5 grams").

commercial websites to ensure the quality of the photograph but an accurate replica of one which

Plaintiff purchased:



35.    The back panel of each relevant Folgers product contains the information with

respect to a "serving" as illustrated:

13



36.     Folgers continues to represent to consumers that 1 tablespoon of coffee is necessary to achieve one suggested strength cup of coffee on its own website.  There, one finds a calculator which advises customers how much coffee to use per cup.  If one asks how to make 10 cups, the calculator advises you to use ***10 tablespoons*** of Folgers Coffee:[5]

---

[5]     Screenshot taken Sept. 9, 2020 from https://www.folgerscoffee.com/coffee-how-to/how-to-measure-coffee.



**EXPERT ANALYSIS**

37.     As noted, Plaintiff retained an expert to test Folgers' claims.  The expert is a Ph.D. chemist with experience in the coffee industry, and with appropriate training in mathematical measurements and testing.   The expert personally brewed the varieties of coffee purchased by Plaintiff.  In making his assessment, he took into account standard scientific measurements applied to brewing coffee, such as extraction yield ("EY") and total dissolved solids ("TDS"), measured using an industry standard refractive index measurement.  He calculated the exact gram weight per tablespoon for each variety.  The expert also considered Folgers' assertion that: "The general rule is to add 1 level tablespoon of ground coffee per cup. For example, 6 tablespoons of ground coffee would be recommended for making 6 cups."[6]

---

[6]  https://www.folgerscoffee.com/frequently-asked-questions, Question 3: "What Is The Best Way to Brew Ground and Whole Bean Coffee?" (last accessed Sept. 9, 2020).

38.     The expert's conclusion is that the Folgers canister claims are materially false. Having personally brewed the coffee according to Folgers' instructions, verified the results and made scientific calculations, his findings are as follows as to the three varieties Plaintiff purchased:

| Product | Canister mass (g) | Advertised cup limit (6 fl oz cups) | Mass of level tablespoon (g +/- 0.1 g) | Number of 6 fl oz cups attainable brewed using single serving recipe | Number of 6 fl oz cups attainable brewed using ten serving recipe | % Underfill for single serving recipe | % Underfill for ten serving recipe |
|---|---|---|---|---|---|---|---|
| Classic Roast | 1360 | 380 | 5.09 | 267 | 334 | 29.7 | 12.1 |
| Classic Decaf | 865 | 240 | 4.77 | 181 | 227 | 24.4 | 5.6 |
| Black Silk | 686 | 210 | 4.61 | 149 | 186 | 29.1 | 11.4 |

39.     The percent underfill is significant and well outside the expectation of even the unordinary consumer who construes "up to" to mean potentially less than the represented number of cups following Defendant's own directions, which the reasonable consumer expects to be based upon and produce the maximum yield.

40.     Folgers has previously acknowledged that its coffee yield per canister is not accurate.  In a website, *Truthinadverising.com*, the editors doubted the ability of a Folger's canister to produce the number of cups as advertised.  Folgers responded, noting that it suggests using *1-2 tablespoons* of ground coffee for every 6 fl. ounces of water based on personal preference, which would have an impact on the number of cups a canister will yield. Folgers then indicated that a 30.5 oz. container, without reference to the type of coffee, "should yield about 215-240 cups per canister."  (https://www.truthinadvertising.org/folgers/).  However, this information is not widely known or disseminated, and is contrary to the representations that Folger continues to make on the front of the canisters.

**CONSUMER CONFIRMATION**

41.     Recent publicity concerning this issue has brought forth thousands of comments on websites from dissatisfied Folgers consumers.  Their comments evidence the ordinary reasonable

consumer expectation that if the coffee is brewed as directed (1 tablespoon/cup), the represented number of cups will be realized.  For example:

- Karen A. stated: "Please add me [to a consumer action]…the last container I bought said up to 270 cups and that was not true."

- Erika D. reported: "I also had this problem [of underfill] but I would just shrug it off because it's my favorite brand of coffee."

- Theresa said: "Please add me. I buy Folgers all the time and I never realized why my coffee never lasted as long as it should have."

- Victoria S. complained: "I drink Folgers coffee every day. I knew I was getting short changed."

- Celeste F. observed: "I have purchased 5 of these containers and they go too fast for the [amount] stated in them."[7]

### FDUTPA VIOLATIONS

42.    Under the controlling law, Plaintiff is not required to plead her FDUTPA claim with particularity, or plead the elements of fraud, as held in *Guerrero v. Target Corp*., 889 F. Supp. 2d 1348, 1354-55 (S.D. Fla. 2012):

> Generally "[t]he requirements of Rule 9(b) do not apply to claims under the FDUTPA." *Galstaldi v. Sunvest Cmtys. USA, LLC,* 637 F. Supp. 2d 1045, 1056 (S.D. Fla. 2009). Because FDUTPA was enacted to provide remedies for conduct outside the reach of traditional common law torts like fraud, "the plaintiff need not prove the elements of fraud to sustain an action under the statute." Id. (quotations omitted). Accordingly, the heightened pleading requirements of Rule 9(b) cannot serve as a basis to dismiss FDUTPA claims. *Id.; see also State, Office of Atty. Gen.,*

---

[7]    All    quotes    from    https://topclassactions.com/lawsuit-settlements/consumer-products/beverages/folgers-class-action-says-coffee-servings-are-inflated/ (last accessed Sept. 9, 2020).

*Dep't of Legal Affairs v. Wyndham Int'l, Inc.,* 869 So. 2d 592, 598 (Fla. Dist. Ct. App. 2004) ("A deceptive or unfair trade practice constitutes a somewhat unique tortious act because, although it is similar to a claim of fraud, it is different in that, unlike fraud, a party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission at issue."). Accordingly, the Court finds that Rule 9(b) is inapplicable to Plaintiff's FDUTPA claims.

43.    The Folgers Label Claims are objectively deceptive and, as alleged herein, violate FDUTPA.

44.    Throughout the Class Period defined below, Defendant has engaged in, and continues to engage in, the Folgers Label Claims. As a result, Defendant has sold thousands, if not millions, of Folgers Coffee Products to unsuspecting consumers across Florida through its retailers and online sales channels during the Class Period.

45.    Defendant's Folgers Label Claims are false as discussed above, based on the fact that the Folgers Coffee Products are represented as having characteristics that they, in fact, do not have.

46.    Defendant's Folgers Label Claims are material since this practice was likely to deceive Plaintiff and the Class Members acting reasonably in the same circumstances.

47.    Plaintiff and the Class Members were injured in that they: (1) paid more for a Coffee Product that was not as represented; (2) were deprived of the benefit of the bargain because the Folgers Coffee Products they purchased were materially different than what Defendant had stated on the label; and (3) were deprived of the benefit of the bargain because the Folgers Coffee Products they purchased had less value than what Defendant represented.

//

//

## CLASS ALLEGATIONS

48.     Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

49.     Plaintiff brings this action on behalf of herself and all other similarly situated Class Members pursuant to Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Class against Defendant for violations of FDUTPA:

> All consumers within the State of Florida who purchased the Folgers Coffee Products, as detailed herein, and which contained the Folgers Label Claims within the statute of limitations period, including any tolling period (the "Class Period").  Excluded from the Class are Defendant's current or former officers, directors, and employees; counsel for Plaintiff and Defendant; the judicial officer to whom this lawsuit is assigned; and those who purchased the Folgers Cofree Products for the purpose of resale.

50.     **Numerosity:** The members of the Class are so numerous that joinder of all members is impracticable. Plaintiff is informed and believes that the proposed Class contains hundreds or even thousands of individuals who have been damaged by Defendant's conduct as alleged herein.  The precise number of Class Members is unknown to Plaintiff, but may be determined with reasonable accuracy through class discovery.

51.     **Existence and Predominance of Common Questions of Law and Fact:** This action involves common questions of law and fact, which predominate over any questions affecting individual Class Members.  These common legal and factual questions include, but are not limited to, the following:

    a.   Whether Defendant made false and/or misleading statements to the Class and the public concerning the cup yield in the Folgers Coffee Products;

b.  Whether Defendant omitted material information to the public concerning the actual cup yield of the Folgers Coffee Products;

c.  Whether Defendant's packaging for the Folgers Coffee Products is misleading and deceptive within the meaning of the FDUTPA;

d.  Whether the container label on the Folgers Coffee Products is misleading and deceptive;

e.   Whether Defendant's conduct violates FDUTPA; and

f.  Whether Plaintiff and the Class Members have been damaged and if so the proper calculation of damages.

52.     **Typicality:** Plaintiff's claims are typical of the claims of the Class Members because, *inter alia,* all Class Member have been impacted in the same way by Defendant's false and misleading label claims about the serving yield of its Folgers Coffee Products.  Plaintiff is advancing the same claims and legal theories on behalf of herself and all Class Members.

53.     **Adequacy:** Plaintiff will fairly and adequately protect the interests of the Class Members.  Plaintiff has retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously. Plaintiff has no antagonistic or adverse interest to those of the Class.

54.     **Superiority:** The nature of this action and the nature of the laws available to Plaintiff and the Class make the use of the class action format a particularly efficient and appropriate procedure to afford relief to her and the Class for the wrongs alleged. The damages or other financial detriment suffered by individual Class Members is miniscule compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would thus be virtually impossible for Plaintiff and Class Members, on an individual

basis, to obtain effective redress for the wrongs done to them.  Absent the class action, Class Members would not likely recover, or would not likely have the chance to recover, damages and/or restitution from Defendant, which would continue to retain the proceeds of its wrongful conduct.

55.     Unless a Class is certified, Defendant will retain monies received as a result of its conduct that were taken from Plaintiff and Class Members.

## CLAIM FOR RELIEF

**(Violation of Florida Deceptive and Unfair Trade Practices Act
(FDUTPA-- Damages Against Defendant Folgers)**

56.     Plaintiff realleges and incorporates by reference the allegations previously asserted above.

57.     Defendant has engaged in deceptive acts and unfair practices that have caused actual damages to Plaintiff and the Class Members.

58.     Section 501.204(1), Fla. Stat., makes unlawful "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

59.     Selling, distributing, and introducing the Folgers Coffee Products in interstate commerce are "consumer transaction[s]" within the meaning and scope of FDUTPA.

60.     Plaintiff is a "consumer" as defined by § 501.203, Fla. Stat.

61.     The Folgers Coffee Products are goods within the meaning and scope of FDUTPA and Defendant is engaged in trade or commerce within the meaning and scope of FDUTPA in connection with the sale and distribution of the Folgers Coffee Products.

62.     An objectively reasonable consumer would have been deceived by the Folgers Label Claims, as they are inaccurate and misleading.  Defendant's practices are unfair and deceptive.

21

63.     Plaintiff has sustained actual damages as a result of Defendant's deceptive acts and unfair practices, which violate FDUTPA.

64.     Pursuant to §§501.211(2) and 501.2105, Fla. Stat., Plaintiff demands her damages, attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself and the Class, demands judgment against Defendant and requests the entry of:

a.  An order certifying the Class as requested herein, appointing Plaintiff as Class Representative, and appointing her counsel as Class Counsel;

b.  An order declaring that the conduct complained of herein violates FDUTPA, and awarding damages;

c.  An order requiring Defendant to adopt proper label statements;

d.  An award of attorneys' fees and the reimbursement of litigation costs pursuant to, FDUTPA; and

e.  Such other and further relief as this Court may deem just, equitable, or proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all claims presented herein so triable.

Dated: March 18, 2021

**KOMLOSSY LAW, P.A.**
*/s/ Emily C. Komlossy*
Emily Komlossy (FBN 7714)
eck@komlossylaw.com
4700 Sheridan St., Suite J
Hollywood, FL 33021
Telephone: (954) 842-2021
Fax: (954) 416-6223


*Attorneys for Plaintiff and the Class*

**OF COUNSEL:**

Laurence D. Paskowitz
**THE PASKOWITZ LAW FIRM P.C.**
208 East 51st Street, Suite 380
New York, NY 10022
Telephone: 212-685-0969
lpaskowitz@pasklaw.com

Roy L. Jacobs
**ROY JACOBS & ASSOCIATES**
420 Lexington Avenue, Suite 2440
New York, NY 10170
Telephone: 212-867-1156
rjacobs@jacobsclasslaw.com

Beth A. Keller
**LAW OFFICES OF BETH A. KELLER, P.C.**
118 North Bedford Road
Suite 100
Mount Kisco, NY 10549
Telephone: 914-752-3040
bkeller@keller-lawfirm.com

PATRICIA N. SYVERSON
**BONNETT, FAIRBOURN, FRIEDMAN & BALINT, P.C.**
600 W. Broadway, Suite 900
San Diego, California 92101
Telephone:    619-798-4593
psyverson@bffb.com

ELAINE A. RYAN
CARRIE A. LALIBERTE
**BONNETT, FAIRBOURN, FRIEDMAN & BALINT, P.C.**
2325 E. Camelback Rd. Suite 300
Phoenix, Arizona 85016
Telephone:    602-274-1100
eryan@bffb.com
claliberte@bffb.com

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 18th day of March 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will deliver the document to all counsel of record as follows:

Ronald Y. Rothstein
Sean Suber
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601
Telephone: (312) 558-5600
Facsimile: (312) 558-5700
rrothste@winston.com
ssuber@winston.com

Megan L. Whipp
WINSTON & STRAWN LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543
Telephone: (213) 615-1700
Facsimile: (213) 615-1750
mwhipp@winston.com

Christina Calvar (FL Bar No. 114201)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
Telephone: (212) 294-5331
Facsimile: (212) 294-4700
ccalvar@winston.com

*Attorneys for Defendant*
THE FOLGERS COFFEE COMPANY

*/s/ Emily C. Komlossy*
Emily Komlossy (FBN 7714)


*Attorneys for Plaintiff and the Class*